# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# SPARTANBURG DIVISION

| | |
|---|---|
| Deanna Moore, ) | |
| ) | |
| Plaintiff, ) | |
| ) | **COMPLAINT** |
| v. ) | (JURY TRIAL DEMANDED) |
| ) | |
| Adidas America, Inc., Sterling ) | |
| Infosystems, Inc. ) | |
| ) | |
| Defendants. ) | |
| ) | |

NOW COMES the Plaintiff, by and through her undersigned counsel, and alleges as follows:

## INTRODUCTION

1. Employers regularly use "Consumer Reports," e.g., criminal background checks and credit reports, to screen applicants and employees before making employment decisions, including hiring, firing, demotion, and promotion.

2. Employers whom use Consumer Reports to make employment decisions often hire third party companies, or Consumer Reporting Agencies ("CRAs"), to perform these reports on their employees. For various reasons, the information furnished in these Consumer Reports is often inaccurate and incomplete[1].

3. Recognizing that misreported information in these Consumer Reports often leads to grave consequences for the job seekers, Congress enacted the Fair Credit Reporting Act

---

[1] *Credit Reports: What Accuracy and Errors Mean for Consumers*, 2013: Hearings on S. Hrg. 113-060 Before the Subcomm. on Consumer Protection, Product Safety, and Insurance, 113th Cong. (2013) (statement of U.S. Senator Claire McCaskill, Chair of Commerce Subcommittee on Consumer Protection).

1

("FCRA" 15 U.S.C. §1681 *et seq.*) to ensure that consumer information is furnished and used in a manner that is "fair and equitable to the consumer…" 15 U.S.C. §1681(b).

4. Accordingly, under the FCRA, 15 U.S.C. § 1681b(b)(3)(A), *before* taking any adverse employment action based in whole or in part on a Consumer Report, the employer must provide to the job applicant:

- a. a copy of the consumer report;
- b. a description in writing of the rights of the consumer under the FCRA, i.e., a "pre-adverse action notice;" and
- c. a reasonable opportunity to dispute the information before rendering the adverse employment decision.

5. The reasons for the pre-adverse action notice requirement in employment situations are to alert the job applicant that he is about to be rejected based on the content of the Consumer Report, and to give him an opportunity to challenge the accuracy or relevancy of the information with the CRA or the employer before the job prospect is lost.

6. To further ensure that employers follow the pre-adverse action notice requirement described above, Congress also imposed requirements on CRAs who furnish Consumer Reports for employment purposes. A CRA may furnish a Consumer Report for employment purposes only if it first obtains certification from the employer that they *will comply* with the pre-adverse action notice requirements. 15. U.S.C. § 1681b(b)(1).

7. This is a civil action brought to recover damages and equitable relief from Defendants Adidas America, Inc. ("Adidas") and Sterling Infosystems, Inc. ("Sterling") on account of Defendants' failure to adhere to the above-listed requirements of the FCRA.

Additionally, Plaintiff pleads two state common law claims for breach of contract and promissory estoppel against Defendant Adidas.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681(p) and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 because these claims are based upon the same operative facts as the federal claims over which the Court has jurisdiction.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391. Plaintiff sought employment in this District; and some or all of the actionable conduct for which relief is sought occurred in this District.

## PARTIES

10. Plaintiff is a resident of Spartanburg County and a former job applicant of Adidas.

11. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1681a(c).

12. Adidas is a German multinational corporation, headquartered in Herzogenaurach, Germany, that designs and manufactures shoes, clothing, and accessories.

13. Adidas' North American division, Adidas America, Inc., is an Oregon corporation with its principal place of business at 5055 N. Greeley Avenue, Portland, Oregon 97217.

14. Adidas operates its largest distribution center in the world from a facility located at 670 Falling Creek Road, Spartanburg, South Carolina 29301.

15. At all times pertinent hereto, Adidas was a user of consumer reports and is subject to regulation under 15 U.S.C. § 1681b.

16. Sterling is a Delaware corporation with its principal place of business at located at 1 State Street Plaza, 24th Floor, New York, NY.

17. Sterling is and was at all times relevant, regularly engaged in the business of assembling, evaluating and disbursing information concerning consumers for the purpose of furnishing consumer reports as defined in 15 U.S.C. § 1681(d) to third parties under contract for monetary compensation.

18. At all times relevant, Sterling was doing business in the state of South Carolina by contracting with companies in this state, including Adidas.

19. Adidas does business in this district, including providing products that are used, offered for sale, sold, or have been purchased in this district. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b), 1391(c), and 1400(b).

## FACTS

20. For over fourteen (14) years Plaintiff worked as an Account Manager for AFS and its predecessor Trendset, a third-party logistics consulting company with a branch office in Greenville, South Carolina.

21. In October of 2016, Plaintiff began looking for another job due to her belief that AFS would move their Greenville based operations to the Company's headquarters in Shreveport, Louisiana in the next five (5) to ten (10) years thereby eliminating her position.

22. During her job search, Plaintiff learned of a position opening for a "Coordinator – Domestic Transportation" at Adidas' Distribution Center in Spartanburg, South Carolina. Plaintiff applied for this position and was selected for an interview that took place on December 21, 2016.

23. During the December 21, 2016 interview, Plaintiff was informed that Adidas' Human Resource Department was the hiring authority and they would contact Plaintiff for a second interview.

24. On January 4, 2017, Plaintiff was contacted by Adidas' Human Resource Department who scheduled a second interview with Plaintiff that took place on January 6, 2017. During this second interview, Plaintiff was informed that Adidas would contact her if they chose to offer her the position.

25. On January 12, 2017, Adidas contacted Plaintiff via telephone to offer her the position. Plaintiff verbally accepted this position over the phone, and Adidas set up an appointment for January 17, 2017 to go over Adidas' Hiring Packet with Plaintiff.

26. January 17, 2017, Plaintiff reported to Adidas office in Spartanburg, South Carolina to discuss and sign certain documents enclosed in Adidas' Hiring Packet. (See Exhibit A – Hiring Packet given to Plaintiff on January 17, 2017). This Hiring Packet included, among other things, the following documents:

    a. Adidas' Guidelines for their Spartanburg Facility;

    b. Adidas' Code of Conduct;

    c. An Overview of Adidas' Benefits;

    d. Adidas' 401(k) Savings and Retirement Plain information; and

    e. Adidas' Group Health Insurance Plan information.

27. In addition to receiving the information listed above, on this same day, Adidas also gave Plaintiff several documents to sign. (See Exhibit B – Jan. 17, 2017 signed documents). These documents included the following:

    a. Position Description for Coordinator Domestic Transportation;

    b. Notice Pertaining to the Agreed to Wages and Hours; and

    c. An Offer of Employment Letter for Coordinator Domestic Transportation.

28. At the conclusion of the January 17, 2017 meeting, after Plaintiff had reviewed and signed the above-mentioned documents, Adidas informed Plaintiff they would be conducting a prescreening employment check and Plaintiff would be contacted by the company performing this check.

29. At no time during the January 17, 2017 meeting was Plaintiff ever informed that her offer and acceptance of the Coordinator position was contingent upon the outcome of the prescreening employment check.

30. Shortly after leaving Adidas' facility on January 17, 2017, Plaintiff received an email from Adidas regarding the prescreening employment check and an email from Sterling, the company performing the prescreening check. (See Exhibit C – Emails from Adidas & Sterling).

31. The above referenced email from Sterling provided a link to a secure network where Plaintiff was to log in and provide her personal information so that Sterling could perform the prescreening employment check. Additionally, the email included, as an attachment, a notice to Plaintiff concerning her rights under the Fair Credit and Reporting Act. (See Exhibit C).

32. It was through the above-referenced email and notice, as well as other representations made by Sterling, that Plaintiff learned Sterling was subjecting her to both a criminal background check and credit report (hereinafter referred to as "Report").

33. Plaintiff provided Sterling with all the requested information for the Report on January 17, 2017, the same day she received their email.

34. On January 23, 2017, six (6) days after Plaintiff submitted her information to Sterling, she received an email from Adidas which stated in part:

> Subject Line: Welcome to adidas!
> Good Morning Deanna!
> Welcome to the adidas team! This is a friendly reminder that your orientation will be held on **Monday, January 30th at 8:30a.**

(See Exhibit D – January 23, 2017, email from Adidas concerning orientation).

35. Based upon all of Adidas' aforementioned representations and statements, Plaintiff decided to inform her current employer, AFS, on January 25, 2017, that her last day of employment would be Friday, January 27, 2017.

36. On January 27, 2017, at 4:24 P.M., after Plaintiff tendered her resignation to AFS, Plaintiff received a voicemail from Adidas explaining that she could not start her employment on Monday, January 30, 2017 because Adidas had not received her Report from Sterling and that such was "still pending." Plaintiff returned Adidas' phone call and confirmed the message that was relayed in the voicemail. (See Exhibit E – Call Log & Voicemail Transcript).

37. As a result of the Plaintiff's correspondences with Adidas on January 27, 2017, she did not report to orientation the following Monday, January 30, 2017.

38. On January 31, 2017, Plaintiff received in the mail the Report Sterling performed along with a pre-adverse action notice that was dated January 25, 2017. This pre-adverse action notice explained that Plaintiff could be denied employment with Adidas based upon the information contained in the Report.

39. The Report Plaintiff received on January 31, 2017 explains that it was completed on January 20, 2017, at 6:06 a.m., and that Adidas initiated both the "Pre-Adverse Action Notification" process and the "Adverse Action Notification" process on January 25, 2017.

40. The simultaneous initiation of both the "Pre-Adverse Action Notification" process and the "Adverse Action Notification" process on January 25, 2017, clearly indicates that Adidas made the decision not to hire Plaintiff on this date.

41. The Report and other representations made by Sterling prove that Adidas received the Report on January 20, 2017, but waited five (5) days before initiating the adverse action

7

processes.  (See Exhibit F – The Report); (See Exhibit G – Email correspondences between Sterling and Plaintiff).

42. Adidas subjected Plaintiff to an adverse action as such is defined by the FCRA by informing Plaintiff on January 27, 2017, that she could no longer report to orientation on January 30, 2017; an adverse action that occurred *before* Plaintiff received notice that Adidas intended to take adverse action on the basis of the Report, *before* Plaintiff was provided with a copy of the report and her rights under the FCRA, and *before* Plaintiff had a meaningful opportunity to dispute The Report.

43. Upon review of the Report, Plaintiff noticed several inaccuracies concerning the outstanding balance on several of her credit accounts.  The accounts in question were either paid off significantly or no longer open.

44. At the time Plaintiff received the Report on January 31, 2017, she was uncertain that Adidas had received such due to the previous statements made, e.g., the email on January 23, 2017 telling her to report to orientation and the subsequent phone call on January 27, 2017 telling her not to report to orientation because Adidas had not received the Report.

45. From January 31, 2017, the date Plaintiff received the Report and pre-adverse action notice, until February 6, 2017, Plaintiff made several phone calls to Adidas seeking to determine whether they had received the Report.  During these correspondences, Adidas would neither confirm nor deny their receipt of the Report.

46. On February 7, 2017, Plaintiff received in the mail, an adverse action notice from Sterling explaining that she did not receive the position with Adidas because of the findings of the Report.  Additionally, this same day, Plaintiff received from Adidas a COBRA notification

8

informing her of her rights to continue her health coverage under Adidas' plan. (See Exhibit H – Adverse Action Notice & Cobra Notification).

47. Plaintiff had no meaningful opportunity to dispute the findings of the Report because by the time she received the Report Adidas had already decided to renege on the agreement to hire her.

48. Upon information and belief, and at all times relevant to this action, Sterling has required the users to whom it furnishes Consumer Reports for employment purposes to sign service agreements, which require the users to prospectively certify they will comply with the Fair Credit Reporting Act.

49. It is Sterling's policy and custom to allow users to whom it furnishes Consumer Reports for employment purposes to have direct access to these Consumer Reports through an internet portal. (See Exhibit G).

50. Sterling furnished a Consumer Report regarding Plaintiff without first obtaining from Adidas a certification that the company would comply with the FCRA's pre-adverse action notification process.

51. Additionally, Sterling furnished a Consumer Report regarding Plaintiff without first obtaining from Adidas a certification that the company had complied the FCRA's written disclosure and authorization requirements.

52. The only written disclosure Adidas made to Plaintiff about the Consumer Report was the January 17, 2017 email Adidas sent Plaintiff informing her that she would be contacted by Sterling so they could perform the Consumer Report. (See Exhibit C).

53. Sterling clearly knew of their legal obligations under the FCRA as information on their website proclaims they "are committed to compliance with the many relevant laws that

impact background screening, including but not limited to. . .the Fair and Accurate Credit Transactions (FACT) Act [and] Fair Credit Reporting Act (FCRA)[2]."

**FOR A FIRST CLAIM FOR RELIEF**
**(Willful Violation of the Fair Credit and Reporting Act)**
**15 U.S.C. § 1681b(b)(3); 15 U.S.C. § 1681n**
*Against Defendant Adidas*

54.     Plaintiff incorporates by reference the foregoing allegations as if set forth fully herein;

55.     Sterling, the company Adidas used to perform Plaintiff's background check and credit report, is a "consumer reporting agency" as such is defined by the FCRA's 15 U.S.C. § 1681a(f).

56.     Adidas used a "consumer report," as defined by the FCRA's 15 U.S.C. § 1681a(d) to take adverse action against the Plaintiff.

57.     Adidas willfully violated the FCRA by failing to provide Plaintiff with a "pre-adverse action notification," a copy of the "consumer report," and a meaningful opportunity to dispute the consumer report *before* they committed an "adverse action" against Plaintiff. 15 U.S.C. § 1681b(b)(3).

58.     The FCRA defines an "adverse action" in the employment context as "a denial of employment or any other decision for employment purposes that adversely affects any current or prospective employee." 15 U.S.C. § 1681a(k)(1)(B)(ii).

59.     Adidas' phone call to Plaintiff on January 27, 2017 at 4:24 P.M. informing Plaintiff she could not report to orientation as previously scheduled constituted an "adverse action" within the meaning of the FCRA.

---

[2] https://www.sterlingtalentsolutions.com/about/about-us/

60. Adidas aforementioned actions were "willful" under the FCRA's 15 U.S.C. § 1681n(a)(1)(A) because they knowingly and/or recklessly disregarded their statutory obligations under 15 U.S.C. § 1681(b)(3) of the FCRA, i.e., the two-step adverse action process.

61. Adidas knew of the aforementioned statutory obligations because they routinely use Sterling to perform consumer reports upon their applicants. (See Exhibit B).

62. Adidas knew that since they did not initiate the adverse action process until Wednesday, January 25, 2017, there was a likely possibility that Plaintiff would not receive the Report prior to the start of orientation on Monday, January 30, 2017. In fact, Plaintiff did not receive the Report until Tuesday, January 31, 2017.

63. The delay of initiating the adverse action process put Adidas in a position whereby they would have had to allow Plaintiff to report to orientation only to thereafter inform her they intended to possibly terminate her employment based upon the findings of the Report.

64. Rather than seek compliance with the FCRA, Adidas intentionally sought to circumvent the requirements of the FCRA by falsely informing Plaintiff on January 27, 2017 they had not received her consumer report and that such was still "pending" when in fact they had been in possession of the Report for seven (7) days. (See Exhibits E, F, & G).

65. Based upon Adidas' aforementioned willful violation of the FCRA's 15 USC § 1681b(3), Plaintiff is entitled to statutory damages pursuant to 15 U.S.C. § 1681n(a)(1)(A) of not less than $100 and not more than $1,000; punitive damages pursuant to 15 U.S.C. § 1681n(a)(2); and costs and attorneys' fees, pursuant to 15 U.S.C. § 1681n(a)(3).

**FOR A SECOND CLAIM FOR RELIEF**
**(Negligent Violation of the Fair Credit and Reporting Act)**
**15 U.S.C. § 1681b(b)(3); 15 U.S.C. § 1681o**
*Against Defendant Adidas*
*Pled in the Alternative to Plaintiff's First Claim for Relief*

66. Plaintiff incorporates by reference the foregoing allegations as if set forth fully herein;

67. In the alternative to Plaintiff's First Claim for Relief, Adidas negligently failed to provide Plaintiff with a "pre-adverse action notification," a copy of the "consumer report," and a meaningful opportunity to dispute the consumer report *before* they committed an "adverse action" against Plaintiff. 15 U.S.C. § 1681b(b)(3).

68. Adidas' aforementioned negligent conduct of failing to adhere to the timeline of the two-step process outlined in 15 U.S.C. § 1681b(b)(3) caused Plaintiff actual damages in the form of Plaintiff quitting her former job as an Account Manager for AFS on January 25, 2017, in reliance of the opportunity for employment with Adidas.

69. Although the FCRA does not state a specific timeline, the FTC recommends waiting five (5) business days, from the date of the pre-adverse action notice, for the applicant to respond to the notice before taking adverse action[3].

70. The pre-adverse action notice that Sterling sent to Plaintiff is dated Wednesday, January 25, 2017. (See Exhibit F).

71. Plaintiff suffered an adverse action at precisely 4:24 P.M. on Friday, January 27, 2017 when Adidas informed her that she could no longer report to orientation. (See Exhibit E).

72. In reliance of the FTC's five (5) business day minimum period to dispute the accuracy of a report, Adidas should have initiated the pre-adverse action process on Thursday, January 19, 2017. However, such initiation would have been impossible because Adidas did not receive the Report until January 20, 2017.

---

[3] FTC Staff Op. Letter (June 27, 1997) https://www.ftc.gov/policy/advisory-opinions/advisory-opinion-weisberg-06-27-97

12

73.     At the very least, if Adidas had initiated the adverse action process on the day they received the Report, or at least prior to January 23, 2017, they would not have sent Plaintiff an email informing her to report to orientation thereby prompting Plaintiff to resign from her current employment.

74.     Adidas' actions of waiting until the last possible second to ask Plaintiff to submit to a consumer report, thirteen (13) days before the start of her employment, and further waiting an additional five (5) days after receiving the Report until making a decision to initiate the adverse action process, thwarts any possible compliance with the FCRA's two-step adverse action process as well as the FCRA's Congressional intent to furnish and use consumer reports in a manner that is "fair and equitable to the consumer…" 15 U.S.C. §1681(b).

75.     Had Adidas adhered to the proper two-step process outlined in 15 U.S.C. § 1681b(b)(3), Plaintiff would have known prior to January 25, 2017, the day she gave her resignation to her current employer, that Adidas was not hiring her thus preventing her resignation and total loss of employment.

76.     Based upon Adidas' aforementioned negligent violation of the FCRA's 15 USC § 1681b(3), Plaintiff is entitled to actual damages pursuant to 15 U.S.C. § 1681o(a)(1) and costs and attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2).

**FOR A THIRD CLAIM FOR RELIEF**
**(Willful Violation of the Fair Credit and Reporting Act)**
**15 U.S.C. § 1681b(b)(3); 15 U.S.C. § 1681n**
*Against Defendant Sterling*

77.     Plaintiff incorporates by reference the foregoing allegations as if set forth fully herein;

78.     Sterling compiled and delivered to Adidas a "consumer report," as defined by the FCRA's 15 U.S.C. § 1681a(d), regarding Plaintiff that caused Adidas to withdraw their offer of employment to Plaintiff.

79.     Before adverse action was taken against Plaintiff, Sterling failed to provide Plaintiff with a "pre-adverse action notification," a copy of the "consumer report," and a meaningful opportunity to dispute the consumer report.

80.     As one of the world's largest suppliers of consumer reports, Sterling knew of their statutory obligations under the FCRA but failed to adhere to said statutory obligations.

81.     Based upon Sterling's aforementioned willful violation of the FCRA's 15 USC § 1681b(3), Plaintiff is entitled to statutory damages pursuant to 15 U.S.C. § 1681n(a)(1)(A) of not less than $100 and not more than $1,000; punitive damages pursuant to 15 U.S.C. § 1681n(a)(2); and costs and attorneys' fees, pursuant to 15 U.S.C. § 1681n(a)(3).

**FOR A FOURTH CLAIM FOR RELIEF**
**(Negligent Violation of the Fair Credit and Reporting Act)**
**15 U.S.C. § 1681b(b)(3); 15 U.S.C. § 1681o**
*Against Defendant Sterling*
*Pled in the Alternative to Plaintiff's Third Claim for Relief*

82.     Plaintiff incorporates by reference the foregoing allegations as if set forth fully herein;

83.     Sterling compiled and delivered to Adidas a "consumer report," as defined by the FCRA's 15 U.S.C. § 1681a(d), regarding Plaintiff that caused Adidas to withdraw their offer of employment to Plaintiff.

84.     Before adverse action was taken against Plaintiff, Sterling failed to provide Plaintiff with a "pre-adverse action notification," a copy of the "consumer report," and a meaningful opportunity to dispute the consumer report.

85. As a result of Sterling's actions, Plaintiff was deprived of her consumer rights and prevented from timely and effectively contesting the adverse action.

86. Plaintiff's deprivation of her consumer rights caused her damages in the form of her total loss of employment.

87. Based upon Sterling's aforementioned negligent violation of the FCRA's 15 USC § 1681b(3), Plaintiff is entitled to actual damages pursuant to 15 U.S.C. § 1681o(a)(1) and costs and attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2).

### FOR A FIFTH CLAIM FOR RELIEF
**(Willful Violation of the Fair Credit and Reporting Act)**
**15 U.S.C. § 1681b(b)(1)(A); 15 U.S.C. § 1681o**
*Against Defendant Sterling*

88. Plaintiff incorporates by reference the foregoing allegations as if set forth fully herein;

89. As a nationwide Consumer Reporting Agency, Sterling was well aware that it was subject to the mandates and requirements of the FCRA and knew or should have known about its legal obligations under the FCRA. These obligations are well-established in the plain language of the FCRA and in case law applying those provisions.

90. According to 15 U.S.C. § 1681b(b)(1)(A), a "consumer reporting agency may furnish a consumer report for employment purposes *only if* – (A) *the person who obtains such report from the agency certifies to the agency that* – (i) the person *has complied* with paragraph (2) [written notification and authorization requirements] with respect to the consumer report, and the person *will comply* with paragraph (3) [pre-adverse action provisions] with respect to the consumer report if paragraph (3) becomes applicable."

91. By failing to obtain the required specific certifications from Adidas before Sterling provided them with Plaintiff's consumer report, Sterling violated the express requirement of 15 U.S.C. § 1681b(b)(1)(A).

92. Based upon Adidas' aforementioned willful violation of the FCRA's 15 USC § 1681b(3), Plaintiff is entitled to statutory damages pursuant to 15 U.S.C. § 1681n(a)(1)(A) of not less than $100 and not more than $1,000; punitive damages pursuant to 15 U.S.C. § 1681n(a)(2); and costs and attorneys' fees, pursuant to 15 U.S.C. § 1681n(a)(3).

**FOR A SIXTH CLAIM FOR RELIEF**
**(Negligent Violation of the Fair Credit and Reporting Act)**
**15 U.S.C. § 1681b(b)(1)(A); 15 U.S.C. § 1681n**
*Against Defendant Sterling*
*Pled in the Alternative to Plaintiff's Fifth Claim for Relief*

93. Plaintiff incorporates by reference the foregoing allegations as if set forth fully herein;

94. In the alternative to Plaintiff's Fifth Claim for Relief, Sterling negligently failed to obtain the certifications outlined in 15 U.S.C. § 1681b(b)(1)(A) prior to providing Adidas with Plaintiff's Consumer Report.

95. Sterling's aforementioned negligent conduct of failing to obtain these certifications resulted in Adidas receiving a Consumer Report in violation of the FCRA.

96. Adidas' impermissible receipt of the Plaintiff's Consumer Report caused her actual damages in the form of the lost opportunity for employment with Adidas.

97. Based upon Sterling's aforementioned negligent violation of 15 U.S.C. § 1681b(b)(1)(A), Plaintiff is entitled to actual damages pursuant to 15 U.S.C. § 1681o(a)(1) and costs and attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2).

**FOR A SEVENTH CLAIM FOR RELIEF**
(Breach of Contract)
*Against Defendant Adidas*

98. Plaintiff incorporates by reference the foregoing allegations as if set forth fully herein;

99. Adidas formed a legally binding contract with Plaintiff on January 17, 2017 when she signed the document attached hereto as Exhibit B, the Offer Letter.

100. The Offer Letter undisputedly created a binding contract between Plaintiff and Adidas – it sets forth detailed terms concerning the rights and obligations of the parties; there are no conditions precedent; it was signed by an Adidas' representative; it was expressly accepted by Plaintiff through her signature; and it is supported by adequate consideration, i.e., Plaintiff's agreement to begin working for Adidas on January 30, 2017.

101. Adidas breached this contract by unilaterally revoking the offered employment and not allowing Plaintiff to begin working for them on January 30, 2017.

102. The only language in the Offer Letter that could be construed to effectively disclaim the existence of a contract reads as follows: "While the Company has every hope that employment relationships will be mutually beneficial and rewarding, your employment at adidas Group is 'at will' and you or the Company has the right to terminate the employment relationship at any time." (Exhibit B).

103. As a matter of law, the above cited language did not effectively disclaim the existence of a legally binding contract because such was not underlined and in all capital letters. *See*; S.C. Code Ann. § 41-1-110.

104. Further, every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement. *Restatement (Second) of Contracts* § 205 (1981).

17

105. By failing to disclose a purported condition precedent, i.e., successful passage of a criminal background check and credit report, prior to the execution of the Offer Letter constitutes a breach of Adidas' duty of good faith and fair dealing.

106. As a direct and proximate result of Adidas' breach, Plaintiff has suffered damages in the form of lost wages, lost benefits, as well as other incidental and consequential damages.

**FOR AN EIGHTH CLAIM FOR RELIEF**
*(Promissory Estoppel)*
*Against Defendant Adidas*
*Pled in the Alternative to Plaintiff's Seventh Claim for Relief*

107. Plaintiff incorporates by reference the foregoing allegations as if set forth fully herein;

108. In the alternative to Plaintiff's breach of contract claim, if it is found that the Offer Letter attached hereto as Exhibit B did not create a legally binding contract then Plaintiff relies upon such, as well as other representations, to form the basis of a promissory estoppel claim.

109. On January 17, 2017, when Plaintiff reported to Adidas' office in Spartanburg, South Carolina to discuss and sign certain documents enclosed in the Hiring Packet, Adidas disclosed many terms, obligations, benefits, and incentives of the agreed to employment. (See Exhibits A & B).

110. On or about January 17, 2017, Plaintiff was effectively enrolled in Adidas' 401k savings and retirement plan as well as Adidas' group health insurance plan. (See Exhibits A & H).

111. On January 23, 2017, Plaintiff received an email from Adidas informing her to report to orientation at their facility in Spartanburg, South Carolina. (See Exhibit D).

112. By all the aforementioned representations Adidas made to Plaintiff, it was reasonable for Plaintiff to assume and rely upon the fact that she would be given a good faith opportunity to perform the duties of the offered position.

113. Plaintiff did in fact rely upon the aforementioned representations to her detriment by quitting her current employment that she held for fourteen (14) years to take Adidas' offered position.

114. Plaintiff's detrimental reliance upon Adidas' representations has caused her to suffer damages in the form of lost wages and lost benefits stemming from her former employment.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff prays judgment against the Defendants herein for relief specified above in this complaint together with:

a. For any and all available equitable, prospective and injunctive relief;

b. All available damages and remedies under 15 U.S.C. § 1681n, to include, statutory damages, punitive damages, and attorney fees and costs;

c. All available damages and remedies under 15 U.S.C. § 1681o, to include, actual damages and attorney fees and costs;

d. Actual, consequential, incidental and restitution damages to be found fair and equitable within the discretion of the fact finder;

e. An injunction against Defendants and its officers, agents, successors, employees, representatives and any and all persons acting in concert with it, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein in the future; and

  f. Such other and further equitable relief as this Court deems just and proper.

               Respectfully Submitted,

               <u>S/ John G. Reckenbeil</u>
               John G. Reckenbeil, Fed I.D. No. 7671
               Lawrence E. McNair, III, Fed I.D. No. 11723
               LAW OFFICE OF JOHN RECKENBEIL, LLC
               215 Magnolia Street (29306)
               Post Office Box 1633
               Spartanburg, South Carolina 29304
               Phone: (864) 582-5472
Dated: <u>June 6, 2017</u>       Fax: (864) 582-7280
Spartanburg, South Carolina

20